**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DARREN M. REESE,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | **Case No. 2:20-cv-04124** |
| **v.** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **WARDEN, NOBLE CORRECTIONAL** | : | **Magistrate Judge Michael R. Merz** |
| **INSTITUTION,** | : | |
| | : | |
| **Respondent.** | : | |

**OPINION & ORDER**

**I.      INTRODUCTION**

This matter is before the Court on Darren M. Reese's Petition for Writ of Habeas Corpus (ECF No. 1), and the subsequent Magistrate Judge recommendations and Petitioner objections. (*See* ECF Nos. 43, 46, 48, 51).  The core of this case is about the nature of the federal courts' power to grant habeas relief, as restricted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Petitioner's prayer for relief is, at bottom, rooted in his belief that Ohio state courts have improperly interpreted state statutes; but as the Magistrate Judge pointed out, Petitioner's argument the rule of lenity and its proper application to Ohio drug laws "misunderstands our role," as "it is not the province of a federal habeas court to reexamine state court determinations on state law questions."  (Report and Recommendations at 9, 10 (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)), ECF No. 43).  For this reason and for the reasons set forth more fully below, Petitioner's Objections (ECF Nos. 46, 51) are **OVERRULED** and the Magistrate Judge's Report and Recommendation (ECF No. 43) and Supplemental Report and Recommendation (ECF No. 46) are **ADOPTED AND AFFIRMED**.  Reese's Petition for Writ of

1

Habeas Corpus (ECF No. 1) is **DISMISSED WITH PREJUDICE**.  Because reasonable jurists could not disagree, Petitioner is **DENIED** a certificate of appealability.  No writ shall issue.

## II.     BACKGROUND

### A.     Factual Background

The Ohio Fifth District Court of Appeals recounted the proceedings of Petitioner's conviction as follows:

> {¶ 2} The Zanesville–Muskingum County Drug Task Force conducted a series of controlled drug buys of cocaine with appellant in April and May of 2015, and executed a search warrant on June 1, 2015.  The first transaction was for 51.4 grams of cocaine, the second for 27.4 grams, the third for 104.97 grams after drying and 149.65 before drying, and the final for 14.62 grams after drying and 26.69 before drying.  The search warrant yielded 83.13 grams of cocaine.
>
> {¶ 3} Appellant was charged with four counts of trafficking in drugs,[1] one count of illegal manufacture of drugs, and one count of possession of drugs.  He filed a motion to conduct a purity analysis of the cocaine, which the State opposed.
>
> {¶ 4} On August 17, 2015, appellant entered a no contest plea to the indictment. As part of the plea, he stipulated to the lab test results, which did not specify the purity of the cocaine.  He was sentenced to a total of sixteen years incarceration.

*State v. Reese*, 2016-Ohio-1591, 2016 WL 1570116, at *1 (Ohio Ct. App. Apr. 15, 2016) (hereinafter "*Reese I*").  In the initial indictment, Counts 1, 2, 3, 5, and 6 (i.e., the four counts of trafficking and the one count of possession) were considered first-degree felony offenses, and Count 4 (illegal manufacture) was a second-degree felony.[2]  (Indictment at 1–4, State Ct. R. Ex.

---

[1] Respondent writes that Petitioner was indicted on five counts of drug trafficking, but lists only four counts. (Resp't's Return of Writ at 3, ECF No. 36).  The indictment reflects only four counts of drug trafficking.  (Indictment 1–3, State Court Record Ex. 1, ECF No. 11).

[2] In Petitioner's recounting of the facts of the case, he writes that the indictment "only effectively charged four (4) counts of fifth-degree drug trafficking, one (1) count of second-degree illegal manufacturing, and one (1) count of fifth-degree drug possession." (Petition for Writ of Habeas Corpus at 1, ECF No. 1).  This Court understands Petitioner's statement as an assertion that the indictment was wrong — that is, the same argument that undergirds his habeas claim — rather than as a dispute of the fact that the indictment charged him with four counts of first-degree trafficking.  As such, this Court need not consider whether Petitioner's statement overcomes the presumption that the facts set forth by the Fifth District are correct.  *See* 28 U.S.C. § 2254(e)(1).

1, ECF No. 11). Additionally, Counts 3 and 4 included major drug offender specifications. (*See id.* at 2). In conjunction with Reese's no-contest plea, Count 2 became a third-degree felony and Count 5 a second-degree felony. (Resp't's Return of Writ at 3, ECF No. 36). Ultimately, Petitioner was sentenced to five (5) years for Count One (first-degree trafficking felony), twenty-four (24) months for Count Two (third-degree trafficking felony), eleven (11) years for Count Three (first-degree trafficking felony with major drug offender specification), eight (8) years for Count Four (a second-degree manufacturing felony), eight (8) years for Count Five (second-degree trafficking), and five (5) years for Count Six (first-degree possession), with the sentences for Count One and Six served concurrently and the sentences for Counts Two, Four, and Five served concurrently. (Sentencing Entry (Sept. 24, 2015) at 2, State Ct. R. Ex. 8, ECF No. 11).

### B. Procedural Background

#### 1. State Court Proceedings

After Petitioner's sentence by the Court of Common Pleas of Muskingum County, Ohio, Petitioner sought appellate relief through two substantive "routes." (Petition for Writ of Habeas Corpus at 1–2, ECF No. 1). First, Petitioner filed an appeal with the Ohio Fifth District Court of Appeals, "arguing he was improperly convicted based on the total weight of the narcotics rather than the weight of the pure amount of cocaine." *State v. Reese*, 2019-Ohio-3453, ¶ 4, 2019 WL 4024730, at *1 (Ohio Ct. App. Aug. 26, 2019) (hereinafter "*Reese II*"). The Fifth District denied Petitioner's appeal, on the basis that "to sustain a conviction for trafficking in cocaine . . . with a major drug offender specification based on weight of the drug compound, the State is required to prove the identity and a detectable amount of a controlled substance." *Reese I*, 2016 WL 1570116, at *1 (citing *State v. Chandler*, 2004-Ohio-3436, 813 N.E.2d 65 (Ohio Ct. App. 2004), *aff'd*, 846 N.E.2d 1234 (Ohio 2006)). In other words, under then-controlling precedent, the State did not

3

need to show that Reese possessed 100 grams of pure cocaine to add a major drug offender specification and thus enhance his sentence with respect to Count 3; instead, it needed only to show that Reese possessed over 100 grams of a mixture that included cocaine. *Chandler*, 813 N.E.2d at 74. Petitioner appealed that decision to the Supreme Court of Ohio, arguing that "[t]he state, in prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)(a) through (f), must prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture." (Memo. in Supp. of Jurisdiction at 1 (quoting *Reese I*, 2016 WL 1570116, at *1), State Ct. R. Ex. 17, ECF No. 11). The Supreme Court of Ohio accepted jurisdiction, staying proceedings pending its decision in *State v. Gonzales*, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405 (Ohio 2016) (hereinafter "*Gonzales I*"), which posed the same question as Petitioner's appeal. *See State v. Reese*, 146 Ohio St.3d 1427, 2016-Ohio-4606, 52 N.E.3d 1203 (Ohio 2016).

In *Gonzales I*, the Supreme Court of Ohio determined that the offense level for possession of cocaine under Ohio Rev. Code § 2925.11(C)(4) was determined by the weight of the actual, pure cocaine possessed, and not by the total weight of cocaine and filler. *See Gonzales I*, 81 N.E.3d at 412. On the basis of that authority, the Supreme Court of Ohio reversed the Fifth District's decision in *Reese I* and remanded Petitioner's case to the trial court for resentencing. *See State v. Reese*, 150 Ohio St.3d 564, 2016-Ohio-8471, 84 N.E.3d 1002 (Ohio 2016). But the Supreme Court of Ohio soon reversed its decision in *Gonzales I* after the State requested reconsideration, instead finding "that the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4)." *State v. Gonzales*, 150 Ohio St.3d 276, ¶ 3, 2017-Ohio-777, 81 N.E.3d 419, 420 (Ohio 2017) (hereinafter "*Gonzales II*"). The Supreme

4

Court of Ohio then reconsidered and reversed its previous reversal in Petitioner's case: it upheld the Fifth District's decision in *Reese I* in May 2017, thereby affirming Petitioner's original sentence based on the new holding of *Gonzales II*. *State v. Reese*, 150 Ohio St.3d 565, ¶ 3, 2017-Ohio-2789, 84 N.E.3d 1002, 1002 (Ohio 2017).

The second "route" for post-conviction relief pursued by Petitioner consisted of a Motion to Correct Void Judgment, filed on November 27, 2018, in which Petitioner "challeng[ed] the subject matter jurisdiction of the trial court because the indictment failed to include specific numerical designations . . . [and] further argued two of his counts were allied offenses and should have been merged for sentencing." *Reese II*, 2019 WL 4024730, at *1. The trial court denied Petitioner's motion, and the Fifth District Court of Appeals affirmed. *See generally id.* In denying both of Petitioner's assignments of error, the Fifth District panel noted that Petitioner's arguments were barred by the doctrine of *res judicata* because he "could have raised the defects in the indictment in his direct appeal, but failed to do so . . . . Same for his argument on allied offenses and merger of sentence." *Id.* at *3. Petitioner appealed the decision, but the Supreme Court of Ohio did not accept jurisdiction. *State v. Reese*, 157 Ohio St.3d 1538, 2020-Ohio-122, 137 N.E.3d 1196 (Ohio 2020).

While his appeal of the denial of motion to vacate was pending, Petitioner revisited his first "route" for relief by applying to reopen his direct appeal of the trial court judgment in June 2019. (Appl. to Reopen Appeal, Ex. 41, ECF No. 11). He argued that his appellate counsel had provided ineffective assistance for failing to argue that the trial court could not sentence him for charges different than those detailed in the grand jury indictment and that his sentence was void due to *stare decisis*. (*Id.* at 3–4). The Fifth District denied Petitioner's application to reopen as untimely, because it was filed two years after the direct appeal was final without a showing of good cause.

(Entry, State Ct. R. Ex. 42, ECF No. 11). The Supreme Court of Ohio declined to hear Petitioner's appeal of that decision on October 29, 2019. *See State v. Reese*, 157 Ohio St.3d 1468, 2019-Ohio-4419, 133 N.E.3d 546 (Ohio 2019).

## 2. *Federal Habeas Petition*

Subsequently, Reese filed the instant petition pursuant to 28 U.S.C. § 2254 in this Court on August 12, 2020. (*See generally* Pet. for Writ of Habeas Corpus, ECF No. 1). In his petition, Reese raises the following grounds for relief:

**CLAIM ONE:** The appellate court used non-federal grounds to deny review of his federal claims.

**[Supporting Facts:]** This issue was brought up in my memorandum in support of jurisdiction in O.S.Ct. No. 2019-1211, via the explanation presented. I met the 90-day barometer, but to evade federal review, the appellate court expanded the terms of the rule. Any other appellant who has demonstrated cause for filing outside the 90-day limit has received review of the merits of application.

**CLAIM TWO:** Received ineffective assistance of appellate counsel.

**[Supporting Facts:]** Appellate counsel failed to raise "dead-bang" winning arguments.

**CLAIM THREE:** Convictions and sentences for drug offenses are void based upon being greater than that found by grand jury.

**[Supporting Facts:]** Because the trial court had no authority to correct a defective indictment, and the State could not constructively amend such on no contest pleas, any conviction and sentence in excess of that found by the grand jury is void ab initio. I attacked the convictions and sentences at issue, as void and voidable.

**CLAIM FOUR:** Sentences for allied offenses of similar import constitute double-jeopardy

**[Supporting Facts:]** The issue of similar import for illegal manufacturing of drugs and trafficking in the same drugs was well-settled by the very appellate court I presented grievance. Therefore, the doctrine of stare decisis employed to render a failure to correct plain error of constitutional magnitude. This violated the Double Jeopardy Clause and Ohio's codification of such in O.R.C. 2941.25. This voided the sentences pursuant to constitutional and statutory grounds. Notwithstanding the fact that Ohio law provides the State with a corrective measure, the Supreme Court

demands an absolute sweep. Based upon opportunity to correct, passing invokes federal jurisdiction.

This matter invoked this Court's duty to protect and maintain the supremacy of the Constitution, *Ward v. Bd. of Comm'rs of Love City* (1920), 253 U.S. 17, 23, and warrants a conditional writ to correct federal violations.

(*Id.* at 1–4). In lieu of a Return of Writ, the Warden filed a Motion to Dismiss (ECF No. 12). The Magistrate Judge recommended granting the motion to dismiss, but withdrew that recommendation upon objection by Petitioner and ordered Respondent to complete the return of writ. (*See* R. & R., ECF No. 22; Obj., ECF No. 25; Notation Order, ECF No. 26; Order, ECF No. 27). The Warden did so on November 8, 2021. (Answer / Return of Writ, ECF No. 36).

After careful consideration of the Petition, the Warden's Return of Writ, and Petitioner's Traverse, the Magistrate Judge issued a Report and Recommendation on January 19, 2022, in which he recommended that the petition for writ of habeas corpus be dismissed with prejudice. (R. & R., ECF No. 43). Upon Petitioner's submission of objections (ECF No. 46), this Court recommitted the case to the Magistrate Judge to further analysis. (Recommittal Order, ECF No. 47). In the Supplemental Report and Recommendation (ECF No. 48), the Magistrate Judge maintained his previous recommendation that this Court deny all grounds for relief and dismiss the petition. In response, Petitioner submitted further objections. (ECF No. 51). Both R&Rs and corresponding objections are now ripe for this Court's consideration.

## III.    STANDARD OF REVIEW

### A.    Objections to Report and Recommendation

If a party objects within 14 days to a magistrate judge's proposed findings and recommendations, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.

7

§ 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  The district court may "accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions."  Fed. R. Civ. P. 72(b).  On the other hand, if a party fails to object timely to the magistrate's recommendation, that party waives the right to *de novo* review by the district court of the report and recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  Waiver does not, however, "preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard."  *Id.* at 154.

A party's objection should be specific, identify the issues of contention, and "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  The onus is on the objecting party "to pinpoint those portions of the magistrate's report that the district court must specially consider."  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quotation marks and citation omitted).  When a pleader fails to raise specific issues, the district court will consider this to be "a general objection to the entirety of the magistrate report[, which] has the same effects as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Finally, allegations in a *pro se* complaint are subject to "'less stringent standards than formal pleadings drafted by lawyers,' and therefore should be liberally construed," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)), but even "the lenient treatment generally accorded to *pro se* litigants has limits."  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (internal citations omitted).

### B.    Habeas Corpus

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act, which restricted federal courts' power to grant habeas corpus relief.  *See Irons v. Casey*, 505 F.3d 846, 856 (9th Cir. 2007) (Noonan, J., concurring) (referring to AEDPA as "direct legislative interference in the independence of the judiciary").   Pursuant to AEDPA, federal district courts are empowered to grant a petition for a writ of habeas corpus on claims that were adjudicated on the merits in state court only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d)(2).  The first provision "circumscribes a federal court's review of claimed legal errors," while the latter "places restrictions on a federal court's review of claimed factual errors."  *Loza v. Mitchell*, 705 F. Supp. 2d 773, 786 (S.D. Ohio 2010).

Habeas relief under § 2254 "does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and is fundamentally a remedy for violations "of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Thus, a "federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure," *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987) (citing *Combs v. Tennessee*, 530 F.2d 695 (6th Cir.), *cert denied*, 425 U.S. 954 (1976)), and instead is bound by the highest state court's interpretations of state laws.  *Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (citing *Brown v. Ohio*, 432 U.S. 161, 167 (1977); *Garner v. Louisiana*, 368 U.S. 157, 169 (1961)).

With respect to questions of federal law, a state court decision is determined to be "contrary to" federal law either where a "state court confronts facts that are materially indistinguishable from

9

a decision of the Supreme Court and nevertheless arrives at a result different from its precedent," *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 390 (2000)), or if a "state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases." *Id.* (quoting *Taylor*, 529 U.S. at 406).  A decision is deemed "unreasonable" if a state court has set out the correct legal standard but applied that standard in an objectively unreasonable manner. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").  The legal standards that constitute "clearly established Federal law," for the purposes of AEDPA, comprise only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018) (quoting *Andrade*, 538 U.S. at 71) (alteration in original).  Similarly, the habeas court's review of claims of factual error by a state court under § 2254(d)(2) is highly deferential, *see Burt v. Titlow*, 571 U.S. 12, 18 (2013), especially as findings of fact made by a state court are presumed to be correct and the petitioner bears the burden of overhauling that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Finally, a prisoner must ordinarily exhaust her available state court remedies before seeking habeas relief.  The exhaustion requirement is met by fairly presenting her claims to state courts, including the highest court in the state. *Id.* § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999).  This requirement allows "state courts [to] have the first opportunity to review" a prisoner's federal claims "and provide any necessary relief." *Boerckel*, 526 U.S. at 844 (citing

10

*Rose v. Lundy*, 455 U.S. 509, 515–16 (1982); *Darr v. Burford*, 339 U.S. 200, 204 (1950)).  The

Sixth Circuit has set out four ways a petitioner can "fairly present" her federal claim to state courts:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (quoting *McMeans v. Brigano*, 228 F.3d 674,

681 (6th Cir. 2000)).  Additionally, a prisoner must have presented the same legal and factual

substance in her claims to state courts that she later raises on habeas in federal courts.

## IV.     LAW & ANALYSIS

### A.     Statute of Limitations Defense

As a threshold matter, Respondent suggests in both his Motion to Dismiss (ECF No. 12)

and Return of Writ (ECF No. 36) that Reese's habeas petition should be dismissed as time-barred

by the one-year statute of limitations contained in AEDPA.  Specifically, 28 U.S.C. § 2244(d)

states that a state prisoner has one year from "the date on which the [state court] judgment became

final by the conclusion of direct review or the expiration of the time for seeking such review" to

file a federal habeas case.  (Answer / Return of Writ at 12, ECF No. 36).  Respondent notes, and

Reese does not dispute, that the one-year statute of limitations began to run on May 16, 2017, when

the Supreme Court of Ohio affirmed Reese's sentence pursuant to *Gonzales II*.  *See Reese*, 84

N.E.3d at 1002.  The parties agree, too, that the instant Petition (ECF No. 1) was received by the

Court on August 12, 2020 — more than two years after the statute of limitations expired.  (*See*

Answer / Return of Writ at 17, ECF No. 36; Am. Traverse at 8, ECF No. 42).

To establish timeliness, Reese invokes the prison mailbox rule: he claims that he deposited

the petition in the prison mailbox on July 20, 2017, but did not discover that this Court did not

receive the petition until the summer of 2020, at which time he re-filed the instant petition.  (*See* Am. Traverse at 8, ECF No. 42).  The prison mailbox rule dictates that "a *habeas* petition is considered filed when the prisoner provides the petition to prison officials for filing," not when a court receives the petition.  *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012); *see also* FED. R. APP. P. 4(c).  Thus, if Reese's claims are true, he effectively filed his petition on June 20, 2017, well within the one-year statute of limitations.

In support of this timeline, Reese has provided a notarized declaration stating that he deposited the federal habeas petition in the prison mailbox at Noble Correctional Institution, where he is incarcerated, on July 20, 2017.  (*See* Traverse at 27, ECF No. 21).  The declaration was notarized by Diane Mozena, the prison unit secretary.  (*Id.*).  He later provided a second declaration from Mozena herself, containing similar substance as the first declaration from Reese.  (Obj. at 4, ECF No. 25).  Both declarations reference "records" that indicate that Reese handed prison officials the initial habeas petition in 2017 to mail and that Reese later learned in 2020 that the Court never received that petition, but do not include those records as attachments.  (*See id.*).  Finally, Reese provides a withdrawal slip, purporting to show that he paid $2.00 from his prison account to cover postage for mailing the petition in July 2017.  (*Id.* at 5).  Respondent, however, notes that the prison's records do not show any such withdrawal from Reese's account during that timeframe.  (Inmate Demand Statement, ECF No. 36-1 at 2).

In the Magistrate Judge's Report and Recommendations (ECF No. 43), he recommended that this Court deny Respondent's statute of limitations defense and find that the Petition (ECF No. 1) was timely filed.  As Respondent has not objected (*see generally* ECF, 2:20-cv-04124), he has waived *de novo* review of the Magistrate Judge's recommendation.  Importantly, though Respondent argues that Mozena's declaration cannot be considered an affidavit under Ohio Rev.

12

Code § 147.141 and casts doubts on its authenticity, he does not provide any affirmative evidence demonstrating either that the declaration is false or that it did not reflect Mozena's truly-held beliefs. (*See* Return of Writ at 18, ECF No. 36; *see also* R. & R. at 7, ECF No. 43 ("Nonetheless, the Warden does not deny Ms. Mozena holds the position she claims and her Declaration is at least some external corroboration of Reese's claims.")). Moreover, as the Magistrate Judge noted, the statute of limitations is not jurisdictional. *See McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003); *see also Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (noting the general preference for deciding cases on the merits) (internal citations omitted). Accordingly, this Court **ADOPTS** the Magistrate Judge's recommendation and **DENIES** Respondent's Motion to Dismiss (ECF No. 12) and the statute of limitations defense therein.

### B. Petition for Writ of Habeas Corpus

Petitioner raises four grounds for relief in his Petition for Writ of Habeas Corpus (ECF No. 1). But it appears from his briefing that a different issue is at the heart of his quest for post-conviction relief: Reese believes that the Supreme Court of Ohio misinterpreted the state's drug laws in *Gonzales II* and that the correct interpretation would have substantially reduced Reese's sentence pursuant to those laws. Consider, for example, Petitioner's Supplemental Objections (ECF No. 51), over two-thirds of which is spent detailing the litigation history of *Gonzales I* and *Gonzales II* and arguing that the former was correct and the latter wrong. (*See id.* at 4–18). Reese provides a detailed and compelling analysis of how courts interpret statutes, of the legislative history and intent underlying Ohio's drug laws, and of various canons of statutory interpretation. Elsewhere, Reese offers a lengthy and compelling discussion of lenity and the role that, in his

opinion, it ought to have played in the Supreme Court of Ohio's analysis in *Gonzales II*.  (*See* Am. Traverse at 15–20, ECF No. 42).[3]

Although Reese attempts to cloak his argument in the guise of fair warning and vagueness claims, which this Court addresses below, *see infra* Part IV.B.1, his dispute is, at its core, with how state courts have interpreted state law.  (*See* Suppl. Obj. at 4, ECF No. 51 (referencing fair notice); *see also* Obj. at 3, ECF No. 46 ("The [Ohio Supreme Court] was willing to countenance clearly contradictory interpretations of a criminal statute without applying meaningful discussion of the rule [of lenity].")).  The rule of lenity, as currently analyzed and applied in the federal courts, is a canon of statutory construction, an "aid for resolving an ambiguity . . . [that] comes into operation at the end of the process of interpreting what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers."  *Callanan v. United States*, 364 U.S. 587, 596 (1961); *see also* David S. Romantz, *Reconstructing the Rule of Lenity*, 40 Cardozo L. Rev. 523, 524 (2018).  It is not a constitutional principle on its own, except insofar as it is rooted in constitutional considerations of liberty, legislative supremacy, and the due process right of fair notice.  *See* Intisar A. Rabb, *The Appellate Rule of Lenity*, 131 Harv. L. Rev. F. 179, 193–94 (2018).

But correcting mistakes such as the Supreme Court of Ohio's failure to apply the rule of lenity to Ohio Rev. Code § 2925.11(C)(4) is outside the limited remit of federal habeas courts.  After all, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions."  *McGuire*, 502 U.S. at 67–68; *see also* Hon. Stephen R. Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever Increasing*

---

[3] Although Reese does not provide a citation, much of this discussion appears to be drawn verbatim from Recent Case, State v. Gonzales (Gonzales II), *2017-Ohio-777, 2017 WL 938679 (Ohio Mar. 6, 2017)*, 130 Harv. L. Rev. 2259 (2017).

*Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences*, 113 MICH. L. REV. 1219, 1225 (2015) ("[T]he [Supreme] Court has in many instances forbidden federal courts to exercise meaningful review over legitimate constitutional claims, and has instead allowed erroneous constitutional decisions by state courts to stand in the name of comity."). This prohibition applies with equal force to questions of statutory interpretation: "a federal court is bound by a state court's construction of that state's own statutes." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) (quoting *Baner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (internal citations omitted)). In fact, the Sixth Circuit has repeatedly found that habeas petitioners' arguments about the Supreme Court of Ohio's decision in *Gonzales II* are not cognizable for that exact reason. *See Hudson v. Sloan*, 2019 WL 4729829 (6th Cir. Jan. 10, 2019) (denying a certificate of appealability because "[t]he state courts' interpretation of the Ohio drug possession statute is binding on a federal habeas court" (citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam))); *see also Jackson v. Fender*, 2020 WL 3053635 (6th Cir. Apr. 8, 2020) (same). So, too, has this Court. *See James v. Buchanan*, 2019 WL 2462371 (S.D. Ohio June 13, 2019).

Thus, the animating thesis of Reese's petition is simply not a question that this Court can consider on habeas. Of course, the Court will address Reese's arguments about Ohio drug possession and trafficking laws to the extent that he suggests they are so vague as to preclude fair warning; but any such consideration will not entail a second-guessing of Ohio's highest court's construction of its state's statutes. With that background in mind, this Court now addresses Petitioner's four proposed grounds for relief.

*1. Ground One: Denial of Review of Federal Claims on Non-Federal Grounds*

Petitioner initially frames his first claim for relief as a complaint about the Fifth District Court of Appeal's denial of his Application to Reopen Appeal in June 2019, in which he raised claims of ineffective assistance for the first time. (*See* Pet. for Writ of Habeas Corpus at 1–2, ECF No. 1). At the time, Petitioner acknowledged that, under Ohio R. App. P. 26(B)(2)(b), any application to reopen an appeal must be made within ninety (90) days after the journalization of the appellate decision or be accompanied by a showing of good cause. (Appl. to Reopen Direct Appeal, State Ct. R. Ex. 41, ECF No. 18 at 207).

Reese suggests that he met the 90-day filing deadline, but that the Fifth District "expanded the terms of the [90-day] rule" to deny his application to reopen. (Petition for Writ of Habeas Corpus at 3, ECF No. 1). There is no indication, however, that he met the deadline. In fact, it is undisputed that he filed his application to reopen on June 22, 2019, more than two years after the journalization of the appellate decision. (Entry, State Ct. R. Ex. 42, ECF No. 11 at 216–17). In the alternative, Reese argues that "[a]ny other appellant who has demonstrated cause for filing outside the 90-day limit has received review of the merits of application," implying that he had made a sufficient showing of good cause for his untimely filing. (*Id.*). But this, too, is not supported by the record: the Fifth District's decision denying the application found that "he ha[d] not shown good cause for the two year delay from that date." (Entry, State Ct. R. Ex. 42, ECF No. 18 at 217). In the application, Reese asserted that "he could not have timely discovered the operative facts supporting claim of ineffective assistance of appellate counsel" but fails to identify what facts were undiscoverable, or why they took two years to uncover. (Appl. to Reopen Direct Appeal at 2, State Ct. R. Ex. 41, ECF No. 11 at 207). Nor does a close read of the application to reopen uncover any arguments whose factual bases were undiscoverable for two years. (*See*

16

*generally id.*).  Moreover, there is "no federal constitutional right to have the state courts recognize good cause"; thus, the state appellate court's conclusion that Reese had not made an adequate showing of good cause does not constitute a cognizable basis for habeas relief.  (*See* Am. Return of Writ at 30, ECF No. 36).

But as mentioned above, the true reason for Reese's first ground for relief is his belief that the Supreme Court of Ohio failed to apply properly the rule of lenity in *Gonzales II*.  Thus, Reese spends little time arguing that he made a sufficient showing of good cause under Ohio R. App. P. 26(B)(2)(b).  Instead, the bulk of his argument focuses on his lenity claim about the correct interpretation of Ohio Rev. Code § 2925.11(C)(4).  (*See* Am. Traverse at 15–20, ECF No. 42).  In effect, Reese suggests that the language of the statute, which did not include the word "mixture," failed to provide him fair warning because he believed that the severity of punishment for drug possession or trafficking was based on the amount of pure cocaine possessed or trafficked, but he was ultimately punished based on total weight.  (*Id.*).  Further, Reese believes he was deprived of fair warning that the major drug offender specification, which carries an enhanced sentence, applied to possession of one hundred grams or more of cocaine, including fillers, rather than one hundred grams or more of pure cocaine.  *See* OHIO REV. CODE § 2925.11(C)(4)(f).[4]

The requirement of fair warning is, at its core, about "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997).  Thus, the fair warning requirement may take the form of: (1) "the vagueness doctrine [which] bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common

---

[4] The statute reads, in full: "If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term."  *Id.*

intelligence must necessarily guess at its meaning and differ as to its application,'" *id.* at 266 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 291 (1926)); (2) the rule of lenity, by interpreting an ambiguous criminal statute to apply only where its prohibitions are clear from the face of the statute, *id.*; or (3) a prohibition against "courts [] applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.* (internal citations omitted). *But see Rogers v. Tennessee*, 532 U.S. 451 (2001). These considerations apply in equal force to statutes delineating sentences for criminal conduct, as due process requires fair notice of the severity of the punishment, in addition to fair notice of the conduct punished. *See Johnson v. United States*, 576 U.S. 591, 595–96 (2015) ("These principles [underlying the prohibition of vagueness in criminal statutes] apply not only to statutes defining elements of crime, but also to statutes fixing sentences." (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979))).

To determine whether a statute has provided fair notice, the Court "begin[s] with the relevant statutory language and the manner in which it had been construed by the Ohio courts prior to the events in question." *James*, 2019 WL 2462371, at *2 (quoting *O'Neal v. Bagley*, 743 F.3d 1010, 1015 (6th Cir. 2013)) (alteration in original). Here, this Court concludes that the drug possession and trafficking statutes, as understood by Ohio courts, provided Reese with sufficient warning of both the conduct that they prohibited and the severity of punishment. First, as the Magistrate Judge pointed out, "[t]he prohibition in the statute is unmistakably clear: do not possess or distribute cocaine, with the level of punishment calibrated to the weight involved, however that weight is determined." (Supplemental Report and Recommendation at 4, ECF No. 48). Second, Ohio courts had consistently "rejected Petitioner's purity argument over several decades and several amendments to the drug statutes, consistently holding that in cocaine possession and

18

trafficking cases penalties are based on total weight."[5]  *James*, 2019 WL 2462371, at *4 (citing *State v. Smith*, 2011-Ohio-2568, ¶ 12, 2011 WL 2112609, at *3 (Ohio Ct. App. May 27, 2011) (Second District); *State v. Remy*, 2004-Ohio-3630, ¶ 50, 2004 WL 1531940, at *11 (Ohio Ct. App. June 20, 2004) (Fourth District); *State v. Fuller*, 1997 WL 598404, at *2 (Ohio Ct. App. Sept. 26, 1997) (First District)).  In other words, the manner in which state courts had construed Ohio Rev. Code § 2925.11(C)(4)(f) prior to Reese's conduct provided him with plenty of warning that the severity of punishment corresponded with total weight, and did not consider purity or concentration of cocaine.  The Fifth District, which decided Reese's appeal of his sentence, also adhered to this construction; it had previously interpreted the cocaine possession laws to allow for a major drug offender specification based on the presence of cocaine, not the concentration of cocaine.  *James*, 2019 WL 2462371, at *3–*4 (citing *State v. Chandler*, 157 Ohio App.3d 672, 2004-Ohio-3436, 813 N.E.2d 65 (Ohio Ct. App. 2004); *State v. Lenoir*, 2010-Ohio-4910, 2010 WL 3921188 (Ohio Ct. App. Oct. 5, 2010); *State v. Cooper*, 2012-Ohio-3058, 973 N.E.2d 828 (Ohio Ct. App. 2012)).

In short, the decision reached by the Fifth District in affirming Petitioner's sentence in *Reese I* (and the subsequent decisions upholding that sentence) was not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964).  Instead, the decision to penalize Reese based on total weight rather than pure weight was based on the construction of Ohio Rev. Code §

---

[5] Of course, the Sixth District had decided *State v. Gonzales*, 2015-Ohio-461, 2015 WL 502263 (Ohio Ct. App. 2015), the underlying case in *Gonzales I* and *Gonzales II* in favor of the defendant.  But, as this Court noted in *James*, "[o]ne conflicting court of appeals decision, which was not controlling precedent in Ohio's Fifth Judicial District, does not negate the 'reasonable warning' that Petitioner's conduct could be penalized under § 2925.11(C)(4)(f) based on the plain wording of the statute and the scores of cases that said otherwise." *James*, 2019 WL 2462371, at *4 (citing *United States v. Blaszak*, 349 F.3d 881, 886–87 (6th Cir. 2003)).

2925.11(C)(4)(a)–(f) that was already well-established in Fifth District and across the state more broadly. Given that background, Reese was not deprived of fair warning of the punishment that he received. And ultimately, whether Reese has a colorable claim that the rule of lenity should be applied to Ohio's drug possession laws does not decide the issue; for Reese to succeed on his habeas claim, he must also demonstrate that the Supreme Court of Ohio's failure to apply the rule of lenity resulted in an "unexpected and indefensible" development in the law so as to have deprived him of fair notice. *Id.* He has not met that burden. Accordingly, Petitioner's First Ground for Relief is **DENIED**.

### 2. *Grounds Two Through Four*

The Magistrate Judge recommended that this Court deny Petitioner's Second, Third, and Fourth Grounds for Relief because "all three of these claims were procedurally defaulted." (Suppl. R. & R. at 5 (citing R. & R. at 10–17, ECF No. 43), ECF No. 48). As Petitioner did not object to this recommendation and the time for filing such objections under Fed. R. Civ. P. 72(b) has expired, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 43) and Supplemental Report and Recommendation (ECF No. 48) with respect to Petitioner's Second, Third, and Fourth Grounds for Relief.

For the sake of completeness, this Court briefly summarizes the shortcomings of Petitioner's arguments. In short, the Second, Third, and Fourth Grounds for Relief all fall within the prohibition that prevents federal habeas courts from reviewing a prisoner's federal claims if they have been defaulted in state court "pursuant to an adequate and independent state procedural rule . . . unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Sixth Circuit requires "a complicated analysis" to determine if a prisoner's default of a federal claim has

20

resulted through the failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). This analysis looks at whether: "[(1)] there is a state procedural that is applicable to the petitioner's claim and . . . [(2)] the petitioner failed to comply with the rule[,] . . . [(3)] the state courts actually enforced the state procedural sanction[,] . . . [and (4)] the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

The four prongs of the *Maupin* test have been met for the claims raised by Reese in Grounds Two, Three, and Four. First, state courts denied Petitioner's arguments on the basis of state procedural rules. With respect to the Second Ground for Relief, Reese presented his ineffective assistance of appellate counsel claim[6] in his Application to Reopen Appeal, which was denied as untimely pursuant to Ohio R. App. P. 26(B). *See Hoffner v. Bradshaw*, 622 F.3d 487, 504 (6th Cir. 2010) ("Under Ohio law, a claim of ineffective assistance of appellate counsel must be raised as part of an Ohio Appellate Rule 26(B) motion to reopen an appeal before the Ohio Court of Appeals." (citing *State v. Murnahan*, 584 N.E.2d 1204, 1209 (1992); OHIO R. APP. P. 26(B)). Reese suggests that "Respondent's analysis of this claim, as time barred, is flawed, however, by his/her use of hindsight to evaluate the relative importance of various components of the State's

---

[6] In the Petition for Writ of Habeas Corpus, Reese suggests only that "[a]ppellate counsel failed to raise 'dead-bang' winning arguments" without providing any detail as to what those arguments might be. (Petition for Writ of Habeas Corpus at 3, ECF No. 1). Reese later implies in his Traverse that the "dead-bang" winning arguments are the same arguments that he raised in his Motion to Correct Void Judgment, which was denied by the Fifth District in *Reese II*. (Amended Traverse at 25, ECF No. 42). In that decision, the Fifth District wrote that "[a]ppellant [counsel] could have raised the defects in the indictment in his direct appeal, but did not do so." *Reese II*, 2019 WL 4024730, at *2. Reese appear to place great weight on this statement, assuming that the Fifth District holding indicated that there were, in fact, serious defects with the indictment that would have rendered his sentence void if not for the procedural default. But in reality, the Fifth District did not arrive at that conclusion. By contrast, the Fifth District's brief analysis of the merits of Reese's defective indictment claim concluded: "we find they do not affect the trial court's subject matter jurisdiction." *Id.*

case." (Objections at 23 (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)), ECF No. 46). While this argument does touch upon the principles courts must follow in evaluating the merits of ineffective assistance of counsel claims, it has no bearing on the analysis of whether such claims have been procedurally defaulted.

With respect to the Third and Fourth Grounds for Relief, which allege that Reese's convictions are void because the indictment was defective and that he was exposed to double jeopardy because his sentences were not merged as allied offenses, respectively, state appellate courts rejected both arguments as barred by the Ohio doctrine of *res judicata*. *Reese II*, 2019 WL 4024730, at *2–*3.[7]  The doctrine of *res judicata* is a state procedural rule that bars a "convicted defendant from raising and litigating . . . any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in . . . conviction" except in a direct appeal of the judgment. *State v. Perry*, 226 N.E.2d 104, 180 (1967). In disputing this conclusion, Petitioner suggests that his "Third and Fourth Ground's [sic] for Relief are not subject to dismissal for procedural basis . . . [because] the claim could have been raised on direct appeal. . . . Thus, it is not barred by *res judicata*." (Obj. at 26, ECF No. 46). But Reese has misunderstood, and in fact flipped, the law. The doctrine of *res judicata* does not preserve claims that a prisoner could have but did not raise on direct appeal; rather, it prohibits prisoners from subsequently bringing such claims, regardless of their merits.

The remaining prongs of the *Maupin* test have also been met. Petitioner did not timely file his Application to Reopen Appeal or show good cause, nor did he raise his defective indictment or double jeopardy claims in his direct appeal. (Merit Br. of Appellant at iii, State Ct. R. Ex. 12,

---

[7] With respect to the merits of Petitioner's Third Ground for Relief, the Fifth District also noted that any alleged deficiencies in the indictment did not deprive the trial court of subject matter jurisdiction. *See supra* Part IV.B.2 n.6.

ECF No. 11 at 65).  Third, state courts enforced the above-mentioned procedural rules: the Fifth District rejected Petitioner's application to reopen as untimely, pursuant to Ohio R. App. P. 26, and his claims about defective indictment and double jeopardy as barred by *res judicata*.  (J. Entry, State Ct. R. Ex. 42, ECF No. 11 at 216–17; Op., State Ct. R. Ex. 33, ECF No. 11 at 164–69). Finally,  the requirement that claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals has long been "well established" as an adequate and independent state ground.  *See Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (citing *Murnahan*, 584 N.E.2d at 1204.  The same is true for the doctrine of *res judicata*. *See Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("This Court has held that Ohio's use of the doctrine of res judicata to preclude a merits determination of a claim raised in post-conviction proceedings that had been, or should have been, raised on direct appeal is an adequate and independent state ground barring federal habeas review." (citing *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000))).

Nor has Reese demonstrated cause and prejudice so as to overcome the procedural defaults. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004) ("A procedurally defaulted claim may be considered in federal habeas corpus proceedings only if the petitioner shows 'cause' for his failure to comply with the state's procedural rules and 'prejudice' resulting from the alleged violation of federal law." (citing *Thompson*, 501 U.S. at 750)).  He notes only that "[s]everal courts have recognized that . . . the unavailability of adequate legal resources can constitute cause" but provides nothing further.  (Obj. at 15 (citing *Phillips v. Mills*, 1999 WL 685925, at *4 (6th Cir. Aug. 25, 1999), ECF No. 46).  He does not claim, for example, that he has been denied legal

resources or allege any details or facts suggesting that that was the case.[8]  And without any such allegations, there is no basis for this Court to conclude that there existed some "objective factor external to the defense" that impeded Reese's efforts to raise his claims in state court.  *Murray*, 477 U.S. at 488.

Accordingly, the Court **DENIES** Petitioner's Second, Third, and Fourth Grounds for Relief.

## V.    CONCLUSION

For the reasons discussed above and upon independent review, Petitioner's Objections (ECF Nos. 46, 51) are **OVERRULED** and the Magistrate Judge's Report and Recommendation (ECF No. 43) and Supplemental Report and Recommendation (ECF No. 48) are **ADOPTED AND AFFIRMED**.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court now considers whether to issue a certificate of appealability.  When a habeas claim is denied on the merits, a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do so, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

The Court is not persuaded that reasonable jurists would debate the dismissal of Petitioner's claims.  The Court therefore **DENIES** Petitioner's request for a certificate of appealability and

---

[8] Petitioner's arguments on cause and prejudice appear to be copied verbatim from *Tyler v. McCaughtry*, 293 F.Supp.2d 920 (E.D. Wisc. 2003), which may explain why the arguments are not linked to any analysis of the facts of his situation.

further **CERTIFIES** that any appeal would not be in good faith and that an application to proceed *in forma pauperis* on appeal should be **DENIED**.

      **IT IS SO ORDERED.**

                           **ALGENON L. MARBLEY**
                           **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 20, 2023**